Filed 4/25/22  In re T.R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re T.R. et al., Persons Coming Under the Juvenile Court Law. | B314665 <br><br> (Los Angeles County Super. Ct. No. 19CCJP03106A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CASEY T. et al., <br><br> Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee. Conditionally affirmed, remanded with directions.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant Casey T.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant John R.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Casey T. and John R., parents of seven-year-old T.R., five-year-old L.R. and two-year-old John R. III, appeal the juvenile court's order terminating their parental rights under Welfare and Institutions Code section 366.26.[1]  The sole issue on appeal is whether the juvenile court and the Los Angeles County Department of Children and Family Services (Department) complied with their duties of inquiry and notice under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  We agree with Casey and John that the Department failed to comply with its affirmative and continuing duty to inquire whether the children were Indian children and the juvenile court erred by failing to ensure an appropriate inquiry had been conducted.  We further conclude the error was prejudicial.  We conditionally affirm the court's order terminating Casey's and John's parental rights and remand the matter to allow the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law.

---

[1]     Statutory references are to this code unless otherwise stated.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Proceedings*

On May 16, 2019 the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b), on behalf of T.R. and L.R. The petition alleged Casey, who was pregnant at the time, and John had a history of engaging in domestic violence in the children's presence, Casey had a history of "erratic and bizarre" behaviors and John had criminal convictions, all of which placed the children at substantial risk of serious physical harm. At the detention hearing on May 17, 2019 the court found a prima facie case for detaining T.R. and L.R. Paternal grandmother, Olga L., was present at the hearing, and the court ordered the Department to assess her as a potential monitor for the parents' visits. At the request of T.R and L.R.'s counsel the court also ordered the Department to assess the paternal aunt for visitation.

At the July 25, 2019 jurisdiction/disposition hearing the juvenile court amended by interlineation the allegation regarding Casey's behavior to remove reference to "erratic and bizarre" behavior, instead replacing it with an allegation of behavior "consistent with mental and emotional instability." The court dismissed the allegation concerning John's criminal convictions and sustained the remaining allegations as amended. T.R. and L.R. were declared dependent children of the juvenile court and suitably placed under the supervision of the Department. Casey and John were provided family reunification services.

On October 17, 2019, shortly after John III was born, the Department filed a petition on his behalf pursuant to section 300, subdivisions (a), (b) and (j). The allegations were identical to those that had been sustained in the petition regarding the older

children and also included two allegations pursuant to subdivision (j) that the substantial risk of serious harm to the older siblings endangered the baby's safety as well. John III was detained from his parents on October 18, 2019.

The jurisdiction/disposition hearing regarding John III was held on January 6, 2020. The juvenile court dismissed the allegations brought under section 300, subdivisions (a) and (b), and sustained the allegations brought under subdivision (j), as amended by interlineation to exclude certain details. John III was declared a dependent child of the court and placed in the same foster home as T.R. and L.R. Casey was provided family reunification services. No services were ordered for John, who had failed to appear at the hearing and could not be located by the Department.[2]

At the September 18, 2020 12-month review hearing (§ 366.21, subd. (f)) for T.R. and L.R. and six-month review hearing (§ 366.21, subd. (e)) for John III, the juvenile court found Casey's and John's compliance with their case plans had not been substantial. The court terminated reunification services for both parents and set the case for a selection and implementation hearing under section 366.26. The Department was instructed to assess the children's maternal aunt, Margaret S., for placement.

The permanency planning hearing pursuant to section 366.26 was held on August 27, 2021. The juvenile court found returning the children to Casey and John would be detrimental and the children were adoptable. The court terminated Casey's and John's parental rights and identified

---

[2]     Olga had attended a prior hearing in December 2019, during which she told the juvenile court she had no contact information for John.

Margaret and her husband, with whom the children had been living since October 2020, as the prospective adoptive parents.

2. *The ICWA Issues*

At the time it filed the petition on behalf of T.R. and L.R. the Department also filed the required Indian Child Inquiry Attachment (form ICWA-010(A)), on which the Department checked the box acknowledging no inquiry had been made into whether the children were Indian children. The May 16, 2019 detention report indicated John and Casey stated they had no Indian ancestry. Based on that information, the report concluded, "The Indian Child Welfare Act (ICWA) does not apply." Olga was also interviewed in advance of the detention hearing, but there is no indication in the report she was asked about Indian ancestry.

On the day of the detention hearing Casey and John each filed a Judicial Council form ICWA-020 on which they both checked the box for the option, "I have no Indian ancestry as far as I know." During the detention hearing the trial court asked Casey whether John, who was not in the courtroom at the time, had any Indian ancestry. Casey replied John had none that she was aware of. The court did not ask Casey about her own possible Indian ancestry, nor did it ask John or the paternal grandmother, who was in attendance, about Indian ancestry. The court found it had no reason to know ICWA applied but would revisit the finding if new information were brought forward.

The jurisdiction/disposition report for the older children stated the court had found no reason to know ICWA applied and had not ordered ICWA notices be sent. Casey, John and Olga

5

were interviewed for the report but were not asked about possible Indian ancestry.

The October 17, 2019 detention report filed in advance of the detention hearing for John III stated, "on 10/9/2019, mother denied the family having any known Indian Ancestry; therefore, the Indian Child Welfare Act does not apply." The form ICWA-010(A) filed with the petition regarding John III stated an inquiry had been made into whether John III was an Indian child and he had no known Indian ancestry. The form did not list the names of any individuals who had been questioned. Casey filed a second Judicial Council form ICWA-020 on October 18, 2019 again stating she had no known Indian ancestry. At the detention hearing the juvenile court again found there was no reason to know ICWA applied.

In a status report filed May 12, 2020 the Department notified the juvenile court it had been contacted by Margaret, who said she would like to have the children placed with her. There is no indication the Department inquired about possible Indian ancestry during that conversation or any subsequent conversation while assessing Margaret as a prospective adoptive parent.

In September 2020 the Department reported, as part of its attempt to locate family members who might be willing to accept placement of the children, the Department had located a paternal great aunt and paternal great uncle. A Department social worker spoke with both of them. The paternal great aunt told the social worker she had spoken to eight of her 11 siblings about possible placement for the children. There is no indication the Department asked the paternal great aunt and paternal great

uncle about possible Indian ancestry or attempted to contact the other relatives directly.

John eventually filed a form ICWA-020 in John III's case in July 2021, again stating he was not aware of any Indian ancestry.

**DISCUSSION**

1. *ICWA and the Duties of Inquiry and Notice*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family."[3] (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see 25 U.S.C. § 1902.) "ICWA and the controlling federal regulations (see 25 C.F.R. § 23 (2020)) simply set a floor for minimal procedural protections for Indian children, their families and their tribes; the statute authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re T.G.*, at pp. 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene

---

[3]     "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes have the opportunity to intervene in or exercise jurisdiction over a dependency proceeding, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice must be provided to the appropriate tribes. The investigation requirement is found in section 224.2, subdivision (a), which imposes on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552; accord, *In re Antonio R.* 76 Cal.App.5th 421, 429.)

The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra*, 58 Cal.App.5th at p. 290; see § 224.2, subds. (a)-(c).) Specifically, the Department has a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."[4]

---

[4] Pursuant to ICWA, "'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached

(§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child"]; *In re Y.W., supra,* 70 Cal.App.5th at pp. 551-552.)

The duty of inquiry also extends to the juvenile court, which is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c); see also 25 C.F.R. § 23.107(a) ["[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child"]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in the proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . ." (§ 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4); *In re Y.W., supra,* 70 Cal.App.5th at p. 552.) That further inquiry requires interviewing, "as soon as

_____

the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also Welf. & Inst. Code, § 224.1, subd. (c) ["[a]s used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act"].)

9

practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e) & (e)(2)); see also Cal. Rules of Court, rule 5.481(a)(4).)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation officer "knows or has reason to know . . . that an Indian child is involved"].)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families."  (*In re Antonio R., supra,* 76 Cal.App.5th 430; accord, *In re Benjamin M., supra,* 70 Cal.App.5th at p. 743 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here the parent . . . has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

2. *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

As discussed, the Department had a duty pursuant to section 224.2, subdivision (b), to ask not only the parents, but

10

also extended family members whether the children had possible Indian ancestry.[5]  Despite the fact that the Department had repeated contact with the paternal grandmother and a maternal aunt during the three years this case has been pending, the Department failed to ask either of them about Indian ancestry. Likewise, the Department did not ask the paternal great aunt or paternal great uncle about Indian ancestry, nor did it request contact information for the additional paternal extended family members with whom those individuals had contact.  Failure to inquire of these relatives whether the children had Indian ancestry was error under the plain language of section 224.2, subdivision (b).  (See *In re J.C.* (2022) 77 Cal.App.5th 70, 78 ["[t]he Department did not fulfill its duty to conduct an adequate inquiry into whether J.C. may be an Indian child because it did not ask any extended family members—some of whom were readily available—whether J.C. had any possible Indian ancestry"]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at pp. 430-431 [Department failed to fulfill initial duty of inquiry by failing to

_____

5       The Department's duty of inquiry, beginning at initial contact, as now defined in section 224.2, subdivision (b), was added to the Welfare and Institutions Code by Assembly Bill No. 3176 (Stats. 2018, ch. 833, § 5), effective January 1, 2019— that is, several months before the Department filed the initial dependency petition in this case.  Assembly Bill 3176 substantially revised the provisions of California's ICWA-related statutes to conform their language to language in recently adopted federal regulations and, recognizing California's higher standard for investigating whether a child may be an Indian child, to specify more clearly the steps a social worker, probation officer and court are required to take in making an inquiry into a child's possible status as an Indian child.  (*In re T.G., supra*, 58 Cal.App.5th at p. 296.)

ask family members about Indian ancestry despite multiple contacts with relatives]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [failure to speak to anyone other than mother about possible Indian ancestry was error]; *In re Y.W., supra,* 70 Cal.App.5th at p. 553 [Department failed to satisfy duty to inquire by failing to contact relatives; "once the social worker learned of a potentially viable lead to locate [relatives], she made no effort to pursue it"].) In addition, the juvenile court erred in failing to ensure the Department satisfied its duty of inquiry and in finding ICWA did not apply absent an adequate inquiry. (See *In re J.C.*, at p. 79 ["[t]he juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated whether J.C. may be an Indian child. There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case"]; *In re Antonio R.,* at p. 431 ["[a]lthough section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2, subdivision (a), makes clear that the 'affirmative and continuing duty to inquire' whether a child is or may be an Indian child rests with both the Department *and the court*"].)

The Department argues any error in failing to inquire of extended family members was harmless here because "both parents were available and denied Indian ancestry twice, . . . and the parents were in close contact with the reasonably available relatives and knowledgeable about their families and cultural

12

identification."[6] Not only is the assertion the parents were well versed in their family history not supported by the record, but also the argument "ignores the express obligation that section 224.2, subdivision (b), imposes on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry. By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431; accord, *In re J.C.*, *supra,* 77 Cal.App.5th at p. 81 ["the extensive inquiry requirements under section 224.2 presume that a parent's declaration on the ICWA-020 form, reliable or not, is not enough and that the child protective agency must do more than look at the form"]; *In re Y.W., supra,* 70 Cal.App.5th at p. 556 ["the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have"].)

---

[6] "Because the Department's duty to inquire of a child's extended family members is imposed by California law, 'we may not reverse unless we find that the error was prejudicial.'" (*In re Antonio R.*, *supra,* 76 Cal.App.5th at p. 433; accord, *In re Benjamin M., supra*, 70 Cal.App.5th at p. 742 ["[b]ecause the failure here concerned the agency's duty of initial inquiry, only state law is involved"]; see Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

As we recently explained in *In re Antonio R.,* there are myriad reasons parents may not be aware of, or may not want to divulge, their Indian ancestry to the Department, such as fear of being identified as Indian, failure to understand the purpose of self-identifying in dependency cases or the imprecision of orally transmitted family histories. (*In re Antonio R., supra,* 76 Cal.App.5th at p. 432.) Accordingly, a parent's denial of Indian ancestry, even where that parent is in contact with his or her biological family, does not eliminate the Department's statutory duty to question extended family members regarding possible Indian ancestry. Nor can such an error be deemed harmless based on the presumption that extended family members would not have any additional information. (See *id.* at p. 435 ["[w]here the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible. Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry"]; cf. *In re Benjamin M., supra,* 70 Cal.App.5th at pp. 744, 745 ["a court must reverse where the record demonstrates, that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"; "[w]hile we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother"].)

14

## DISPOSITION

The order terminating Casey's and John's parental rights is conditionally affirmed. On remand the juvenile court must promptly direct the Department to make a meaningful and thorough inquiry regarding the children's possible Indian ancestry, including interviews with the paternal grandmother, maternal aunt, extended family members and any other persons who may reasonably be expected to have information regarding the children's possible Indian ancestry.

If the juvenile court determines after a hearing that the Department has satisfied its inquiry and notice obligations under ICWA and California law and the children are not Indian children, then the order terminating parental rights shall remain the order of the court. If the court finds that the children are Indian children, the court shall vacate the order terminating parental rights and conduct further proceedings in compliance with ICWA and related California law.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

15